[Civ. No. 26341. Fourth Dist., Div. One. Jan. 24, 1983.]

In re BILLY M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
BILLY M., Defendant and Appellant.

976

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Barbara A. Smith and Patrick Hennessey, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Keith I. Motley, Michael D. Wellington and Lillian Lim Quon, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WORK, J.**—Billy M. appeals from an order declaring him a ward of the juvenile court (Welf. & Inst. Code, § 602) and committing him to the Califor-

nia Youth Authority. He makes several meritless contentions arising from the juvenile court's inartful pronouncement of its findings and imposition of the maximum term of confinement, and incorrectly claims Penal Code section 654[1] applies to juvenile proceedings even though the juvenile court does not aggregate terms under Welfare and Institutions Code section 726. The People correctly contend the minor was erroneously awarded precommitment conduct credits. We affirm the order as modified.

*Factual and Procedural Background*

Believing 65-year-old John Gordon had some gold, Billy, his brother James and Carl Bolton planned to rob him and take his motor home to Riverside. They and two other young men came onto Gordon's campsite near Niland. As they approached, Gordon saw a boy and a girl approximately one-eighth to one-quarter mile away looking toward him. Billy, James and one young man walked behind Gordon's motor home while the remaining youth drank coffee with Gordon. Gordon was then rushed from behind; fell to the ground; was struck and kicked in the head, ribs and stomach; and lost consciousness.

Billy and James loaded Gordon into his motor home. When he awakened, Billy, James, their sister Susan, Brian Osborne, and Carl and Tim Bolton were in the travelling vehicle with him. During the journey from the campsite to a remote desert location, Billy kicked Gordon in the head and James took some cash from him. While the motor home was parked in the desert west of the lower Coachella Canal Road, Billy and James dragged Gordon from the motor home, his head striking the frame and metal steps of the vehicle causing him to again lose consciousness. At Billy's order Brian started to dig a hole which Billy and others completed. After James placed Gordon into the hole, Billy struck Gordon on the head with a rock. Billy took the shovel and jabbed it down hard several times, apparently striking Gordon because when the shovel was recovered by the police it had the victim's blood and enzyme type on both sides of the spade and on the handle. Billy and his friends covered their tracks and the blood before leaving. That evening Billy and James were nabbed by the police in San Bernardino.

During the initial pat-down search for weapons, over $3,000 was found in Billy's pants' pockets and $1,300 on James. Billy's front shirt, his shirt cuffs, his shoes and his pants were splattered with the same blood and enzyme types as Gordon's.

The police soon located Gordon in the desert where he had regained consciousness and crawled out of his intended grave. He had been robbed of more

---

[1] All statutory references are to the Penal Code unless otherwise specified.

than $5,500. He was hospitalized for six days; required numerous stitches in his head; suffered great pain; and lost a finger.

An amended petition asked Billy be declared a ward of the juvenile court (Welf. & Inst. Code, § 602), for kidnaping (§ 209, subd. (b), count I), attempted murder (§§ 664, 187, count II), robbery (§ 211, count III), assault by means of force likely to produce great bodily injury (§ 245, subd. (a), count IV), mayhem (§ 203, count V), and the unlawful taking of a vehicle (Veh. Code, § 10851, count VI). In addition, great bodily injury (§§ 1203.075, subds. (a)(3) and (a)(5), and 12022.7) and great bodily injury inflicted upon a person 60 years of age or older (§ 1203.09, subds. (a), (b)(iii) and (b)(v)) allegations accompanied the first three counts. After denying a motion to suppress, the juvenile court found all charges and allegations within the petition to be true, the murder attempted was found to be of the second degree. The court declared Billy a ward of the juvenile court, imposed the maximum concurrent terms on each count and enhancement. He was awarded 30 days conduct credit.

THE SECTION 654 PROHIBITION AGAINST MULTIPLE PUNISHMENT DOES NOT APPLY TO JUVENILE PROCEEDINGS WHERE THE JUVENILE COURT ELECTS NOT TO AGGREGATE UNDER WELFARE AND INSTITUTIONS CODE SECTION 726

Before the 1977 amendment to Welfare and Institutions Code section 726, the proscription of multiple punishment within section 654 was held not to apply to juvenile court sentencing (*In re Aaron N.* (1977) 70 Cal.App.3d 931, 940 [139 Cal.Rptr. 258]; *People* v. *Stevenson* (1969) 275 Cal.App.2d 645, 650-653 [80 Cal.Rptr. 392]; *People* v. *Wheeler* (1969) 271 Cal.App.2d 205, 209 [76 Cal.Rptr. 842]), simply because it prohibited multiple *punishment* while the purpose of the Juvenile Court Law was designed to provide for *correction* and *rehabilitation* of youthful offenders rather than their punishment. However, the 1977 amendment of Welfare and Institutions Code section 726 specifically requires aggregate confinement be imposed in accordance with section 1170.1, subdivision (a), which in turn is expressly subject to section 654. ■ Thus, section 654 is statutorily applicable to juvenile court sentencing where the court elects to aggregate. (*In re Michael B.* (1980) 28 Cal.3d 548, 556, fn. 3 [169 Cal.Rptr. 723, 620 P.2d 173]; *In re Eugene R.* (1980) 107 Cal.App.3d 605, 619, fn. 9 [166 Cal.Rptr. 219]; disapproved on other grounds in *In re Ricky H.* (1981) 30 Cal.3d 176, 185-190 [178 Cal.Rptr. 324, 636 P.2d 13]; *In re Maurice H.* (1980) 107 Cal.App.3d 305, 312 [165 Cal.Rptr. 887], disapproved on other grounds in *In re Ricky H., supra,* 30 Cal.3d at pp. 185-190; *In re Dennis C.* (1980) 104 Cal.App.3d 16, 22 [163 Cal.Rptr. 496].)

■ In the adult setting, section 654 applies to concurrent as well as consecutive sentencing for crimes based on one act or an indivisible transaction constituting multiple punishment. (*People* v. *Miller* (1977) 18 Cal.3d 873, 887

[135 Cal.Rptr. 654, 558 P.2d 552]; *People* v. *Lee* (1980) 110 Cal.App.3d 774, 785 [168 Cal.Rptr. 231].) Although the Legislature's action in amending Welfare and Institutions Code section 726 in the area of aggregate juvenile dispositions reflects its awarness of the earlier court decisions declaring section 654 inapplicable to juvenile cases in general, it confined its language to only the area of aggregate terms. Since the intent of Welfare and Institutions Code section 726 is to insure a minor is not subject to confinement for a term in excess of that to which an adult convicted of the same offense or *offenses* is subject, there is no need to stay concurrent terms absent a showing the *length* of the juvenile's term is increased by such disposition. Although unstayed and concurrent sentencing under these circumstances involves multiple punishment because the defendant is subjected to the term of *both* sentences even though served simultaneously (*People* v. *Miller, supra,* 18 Cal.3d 873, 887), this treatment has not been shown to affect the duration of the juvenile's confinement.[2] Unlike *In re Wright* (1967) 65 Cal.2d 650, 654 [56 Cal.Rptr. 110, 422 P.2d 998], where the Supreme Court held imposition of concurrent adult sentences may potentially result in "detrimental operation of other statutes that govern punishment" (see *Wright, supra,* at p. 654, fn. 2), concurrent "sentencing" within a juvenile commitment to California Youth Authority (CYA) has no effect upon potential length of incarceration. ■ For juveniles, the longest maximum term of one of the multiple offenses governs, subject to modification by the inherent variable of the juvenile's individual rehabilitation which in turn controls his or her date of release and consequently the actual length of confinement. In other words, this provision of section 654, enacted to ensure a defendant's punishment is commensurate with his or her criminal liability (*People* v. *Miller, supra,* 18 Cal.3d 873), has no application to juvenile confinement designed for rehabilitation where the court elects to sentence concurrently.

THE JUVENILE COURT ADEQUATELY PRONOUNCED ITS JURISDICTIONAL FINDINGS AND IMPOSED THE MAXIMUM TERM OF CONFINEMENT ON THE ROBBERY COUNT

■ Billy further seeks modification of his commitment by noting that at the dispositional hearing the court apparently misspoke regarding count III, robbery, by imposing an additional three-year consecutive term for violating section "1203.7," a nonexistent provision. The People acknowledge the error but correctly assert it is not prejudicial because the court made true findings regarding sections 1203.075 and 12022.7 regarding that specific count. Accordingly, the People urge the dispositional order be modified to reflect the three-year enhancement being predicated upon sections 12022.7 and 1203.075.

---

[2]Pursuant to our suggestion at oral argument, defense counsel attempted to obtain some documentation tending to show the length of a CYA commitment term is influenced by concurrent sentencing. He has been unable to obtain any.

Although the People's argument is appealing as a "quick fix," there are procedural hurdles to overcome. When a juvenile court makes true findings on the allegations within a count including enhancing provisions, the court must impose the enhancement and has no discretion to strike it in setting the maximum term of confinement pursuant to Welfare and Institutions Code section 726, subdivision (c). (Compare *In re Ricky H., supra,* 30 Cal.3d 176, 191.) However, while the transcript reveals the court expressly found true the sections 1203.075 and 1203.09, subdivisions (a) and (b)(v) allegations accompanying counts two and three, it leaves some doubt that it found true the 1203.075 and 1203.09, subdivisions (a) and (b)(v) allegations to count one and section 12022.7 allegations accompanying each of the first three counts.[3]

Regarding count one, without considering the court's final statement, it is apparent the court expressly found true the section 1203.075 and 1203.09, subdivisions (a) and (b)(v) allegations as to each of the first three counts. Any ambiguity arising from its final statement must be resolved in favor of this clear intent, because of (1) the common factual scenario underlying each count; (2) the lack of any intimation of leniency within either the court's remarks as a whole

---

[3]The following colloquy occurred at the "finding" stage of the jurisdictional hearing: "The Court: There being nothing further with regard to Count 1 which alleged violation of 209B the Court finds the allegation of the petition to be true.

"With regard to Count 2, the Court finds basically upon the testimony of Dr. Reed, that the defendant did not personally, at least premeditate this matter, and, therefore finds the petition true of the lesser included attempted—it will not be the lesser, but attempted murder in the second degree.

"I find the allegation of the petition true with regard to that count of second degree, attempted murder in the second degree.

"Count 3, robbery, the Court finds the allegation of the petition to be true.

"Count 4, on the assault, great bodily, 245A of the California Penal Code, the Court finds the allegation of the petition to be true.

"Count 5, mayhem in violation of 203 of the California Penal Code, the Court finds the allegation of the petition to be true, and,

"Count 6, taking and driving of a vehicle, unlawful driving or taking of a vehicle in violation of 10851, the Court finds the allegations to be true.

"Ms. Bueno: Count 3, I don't believe the Court gives [*sic*] the finding on whether or not the allegations of Count 3 were true or not.

"The Court: I thought I did Count 3. I did not mention that violation of section 211 of the Penal Code and alleges that the said minor by means of force and fear took personal property from the person and possession and immediate presence of John Gordon.

"The Court finds the allegation of the petition to be true.

"Ms. Bueno: The second allegation regarding the victim being over 60 years of age and suffering bodily injury.

"The Court: With regard to the age are we trying to find the section specifically. Personally inflicted great bodily injury on Gordon within the meaning of 1203.75(a)3 [*sic*]. The Court finds that to be true, and, further that the victim, John Gordon was a person who was 60 years of age or older within the meaning of AB3 and 12303.9(a)(b)5 [*sic*].

"Anything else?

"Ms. Bueno: That will be true on Counts 2 and 3 also. 1, 2, and 3.

"The Court: Yes.

"The court makes the same finding with regards to Counts 2 and 3, with regard to age and great bodily injury on each count."

or the final cited sentence; (3) the lack of any attempt by the trial court to negate that finding; (4) the consistency of this interpretation with the trial court's statements at the dispositional hearing confirming his true finding on the allegations as to each count; (5) the absence of any objection by either counsel, as well as the lack of evidence of any confusion or disagreement between the parties regarding the trial court's findings; and (6) the consistency of the interpretation with the clerk's minutes.

The trial court's failure to expressly cite section 12022.7 in its findings regarding personal infliction of great bodily injury, is not error. There is no statutory requirement that, upon resolving a factual allegation, the court make a specific statutory reference within its factual finding. ■ In the first place, "the Juvenile Court Law does not require the making of specific findings and that a general finding that the allegations of the petition are true is sufficient to show the facts upon which the court exercised its jurisdiction to declare the minor a ward or dependent child of the court. [Citations.]" (*In re J. T.* (1974) 40 Cal.App.3d 633, 640 [115 Cal.Rptr. 553].)[4] ■ Secondly, neither Welfare and Institutions Code section 702 nor rule 1355 of the California Rules of Court requires a specific statutory citation within a jurisdictional finding. Moreover, sections 1203.075, subdivision (b)(1),[5] 1203.09, subdivision (c)[6] and 12022.7[7] require merely the findings of the fact underlying the application of the statutes. Finally, here the reference would be superfluous, because each cited section relied upon in the allegations defines "great bodily injury" as defined within section 12022.7 (§§ 1203.075, subd. (b)(3),[8] 1203.09, subd. (d)[9]).

---

[4]"This rule presupposes, however, that the allegations of the petition state appropriate ultimate facts which set forth the specific charge or factual allegations upon which an adjudication is sought declaring the minor to be a person described by sections 600, 601, or 602." (*In re J. T., supra,* 40 Cal.App.3d 633, 640.)

[5]Section 1203.075, subdivision (b)(1) provides: "The existence of any fact which would make a person ineligible for probation under subdivision (a) shall be alleged in the accusatory pleading, and either admitted by the defendant in open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by a plea of guilty or nolo contendere or by a trial by the court sitting without a jury."

[6]Section 1203.09, subdivision (c) provides: "The existence of any fact which would make a person ineligible for probation under subdivision (a) shall be alleged in the information or indictment, and either admitted by the defendant in open court, or found to be true by the jury trying the issue of guilt or by the court where guilt is established by plea of guilty or nolo contendere or by trial by the court sitting without a jury."

[7]Section 12022.7 provides in pertinent part: "The additional term provided in this section shall not be imposed unless the fact of great bodily injury is charged in the accusatory pleading and admitted or found to be true by the trier of fact."

[8]Section 1203.075, subdivision (b)(3) provides: "As used in subdivision (a), 'great bodily injury' means 'great bodily injury' as defined in Section 12022.7."

[9]Section 1203.09, subdivision (d) provides: "As used in this section 'great bodily injury' means 'great bodily injury' as defined in Section 12022.7."

FAILURE TO IMPOSE A MAXIMUM TERM OF CONFINEMENT UPON A TRUE FINDING A MINOR COMMITTED A SPECIFIC OFFENSE AT THE DISPOSITIONAL HEARING DOES NOT CONSTITUTE AN ACT OF LENIENCY.

During oral imposition of the maximum term of commitment to CYA the court failed to refer to count five, mayhem, while the dispositional order nevertheless reflects imposition of the maximum sentence. ■ Billy contends the lack of reference to the count connotes an act of leniency requiring the order be modified to reflect the imposition of no sentence on that count. However, the court returned a true finding on each count, including count five, mayhem. At the dispositional hearing, the court declared it was going to impose the maximum periods of confinement for each count pursuant to Welfare and Institutions Code section 726, however, it did not specifically refer to the upper term for mayhem. The dispositional order correctly reflects the court's intentions because, after returning a true finding on mayhem, the court had no alternative but to impose the maximum term of confinement on that offense; its only discretion at this stage of the proceeding was to decide whether to aggregate the maximum terms of confinement for the respective offenses. (*In re Eugene R.,* *supra,* 107 Cal.App.3d 605, 618; *In re Maurice H., supra,* 107 Cal.App.3d 305, 313; *In re James A.* (1980) 101 Cal.App.3d 332, 339 [161 Cal.Rptr. 588; Welf. & Inst. Code, § 726.) In any event, since the order correctly reflects the true finding on count five and the court's decision declaring the terms on all counts to be served concurrently with each other, the maximum term of confinement would remain the same even if modified.

BILLY'S SUPPRESSION CONTENTION IS NOT COGNIZABLE UPON THIS APPEAL

■ Billy finally contends the court erred in denying his motion to suppress evidence because the justification for his detention and arrest was based upon accomplices' uncorroborated statements.

The issue was not presented to the juvenile court and is not cognizable upon this appeal. (*People* v. *Rogers* (1978) 21 Cal.3d 542, 548 [146 Cal.Rptr. 732, 579 P.2d 1048].) Here, Billy's motion to suppress below was based on an ineffective *Miranda* waiver and his claim the San Bernardino police officers could not detain or arrest him based upon a request from Imperial County law enforcement which did not include all information known by the latter cumulatively amounting to probable cause. However, in the juvenile hearings, he conceded probable cause to arrest existed, arguing simply the information available to Imperial County law enforcement could not be relied upon for probable cause by the San Bernardino police for detention and arrest on the former's request.

BILLY WAS NOT ENTITLED TO PRECOMMITMENT CONDUCT CREDIT

Relying on *In re Ricky H., supra,* 30 Cal.3d 176, 189, the People correctly assert Billy is not entitled to precommitment conduct credit. Accordingly, the dispositional order is modified so as to delete the 30 days awarded for conduct credit.

### *Disposition:*

The dispositional order is modified to reflect the three-year enhancement imposed on count three, robbery, as being based upon sections 12022.7 and 1203.075, and to delete the 30 days awarded for precommitment conduct credit. In all other respects, the order is affirmed.

Wiener, Acting P. J., and Zumwalt, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.