Filed 3/10/26  P. v. Y.D. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>Y.D.,<br><br>    Defendant and Appellant. | H053097<br>(Monterey County<br> Super. Ct. No. 25JV000343) |

In August 2024, when he was 15 years old, Y.D. broke into a firearms store and stole eight firearms.  Four months later, he broke into the store again.  Later Y.D. admitted committing second degree burglary in violation of Penal Code section 459.  Treating the burglary as a felony, the juvenile court placed him on probation with terms and conditions requiring 381 days at a secure youth facility and completion of appropriate programs as directed by his probation officer.

On appeal, Y.D. challenges the juvenile court's designation of his offense as a felony rather than a misdemeanor, his assignment to a secure facility, and the condition requiring him to complete programs at the probation officer's direction.  As explained below, we conclude that the juvenile court permissibly committed Y.D. to a secure facility.  However, we conclude that the court failed to show it recognized and exercised

its discretion to designate second degree burglary as a felony or a misdemeanor, and that the program condition delegated impermissibly broad discretion to the probation officer.

Accordingly, the dispositional order is reversed, and this matter remanded with directions to show recognition and exercise of discretion to choose felony or misdemeanor and also to modify probation condition 11.

## I. BACKGROUND

Because Y.D. admitted the allegations in the wardship petition, we draw the underlying facts from the probation department's reports. (See *In re Sergio R.* (2003) 106 Cal.App.4th 597, 600, fn. 2.)

### A. The Offenses

Y.D. was born in early 2009. In August 2024, police responded to a burglary at a firearm store. The glass front door of the store and the back doors of a gun case were smashed, and several display racks were cleared out. There was a hammer on the ground and blood on the display counter as well as near the front door. Video surveillance showed the perpetrator, later identified as Y.D., breaking into the store and taking eight firearms. Police did not immediately apprehend him.

Four months later, in late December, Y.D. burglarized the same store again and took more firearms. This time, police arrested him and in his home found one of the firearms taken in the August burglary. On Y.D.'s social media account investigators also discovered photos with firearms, including one in which he pointed a firearm at the side of a minor girl's head. Police discovered as well messages on the day of the first robbery between Y.D. and the same girl, in which Y.D. said he had cut his forehead while breaking into a firearm store and had taken "straps," a slang term for firearms.

### B. The Initial Probation Period

The district attorney filed a wardship petition concerning the December burglary, alleging that Y.D. committed three offenses: second degree burglary (Pen. Code, § 459),

carrying a concealed firearm (*id.*, § 25400, subd. (a)(1)), and possession of a firearm by a minor (*id.*, § 29610, subd. (a)(1)). On January 30, 2025, Y.D. admitted these offenses, the juvenile court declared him a ward, and it imposed probation without any period of confinement.

Y.D. was released on probation for roughly six weeks and apparently did well. His mother told the probation officer that she provided constant supervision and that, although Y.D. had previously tested positively for marijuana, he did not abuse any substances while released on probation. Y.D. had previously failed half his classes in his prior semester of school. However, after his parents transferred him to an independent studies program where they could better monitor him, Y.D.'s grades improved, and he maintained a B+ average.

## C. The Disposition

In February 2025, the district attorney filed a new wardship petition concerning the August burglary, alleging that Y.D. committed two offenses: felony second degree burglary (Pen. Code, § 459), and carrying a concealed firearm in a vehicle (*id.*, § 25400, subd. (a)(1)). At a hearing the next day, Y.D. admitted the burglary, which the court described as "a felony," and the court dismissed the firearm allegation.

Two weeks later, in March 2025, the juvenile court held a disposition hearing. The probation officer recommended that Y.D. remain in his parents' custody. Noting Y.D.'s progress in school and that he had asked his parents for haircutting tools to start practicing for a future career, defense counsel urged the juvenile court to adopt the probation officer's recommendations. However, noting the sophistication of the burglaries and asserting that some of the firearms taken were involved in a shooting at a mall, the district attorney requested placement in a secure facility.

The juvenile court agreed with the district attorney and imposed probation with conditions including 381 days in a secure facility. The court began by noting that when it

imposed probation without confinement for the December burglary, it had been a close call even though the August burglary had not yet been admitted or otherwise proven and was not considered. Considering the August burglary, the judge found that confinement in a secure facility was appropriate. In so doing, the judge stated that the August burglary was "very sophisticated" and, indeed, "probably the most sophisticated [Penal Code section] 459 second-degree burglary that I've ever seen." The court also was concerned that some of the firearms taken remained unaccounted for.

In the dispositional hearing the juvenile court did not address whether it was treating the second degree burglary charge against Y.D. as a felony or a misdemeanor. However, in the order issued after the hearing, which the court signed, the burglary was designated a felony. In addition, the order stated that the court was adopting the finding, which the probation officer had recommended, that the "[m]atter is declared a Felony." The probation conditions similarly stated that "[t]he Court declare[s] this matter to be a felony." Finally, the order imposed a number of conditions on Y.D.'s probation, including condition 11, which stated, "You are to participate in and complete any appropriate programs as directed by your Probation Officer."

Y.D. filed a timely notice of appeal.

## II. Discussion

Y.D. challenges the juvenile court's designation of his offense as a felony, his placement in a secure youth center, and one of the conditions imposed on that placement.

### A. Designation of the Offense

Y.D. contends that the juvenile court failed to expressly declare whether his offense was a felony or a misdemeanor and the record does not establish that the court was aware of its discretion to treat the offense as a misdemeanor. We agree. In the final disposition hearing, although the court stated in passing that Y.D.'s offense of second

degree burglary was a "felony," it did not explicit state that it was declaring the offense a felony rather than a misdemeanor as the Welfare Code requires.

Second degree burglary is a " 'wobbler,' " that is, an offense that may be punished as either a felony or a misdemeanor. (*People v. Williams* (2010) 49 Cal.4th 405, 461, fn. 6.) This determination is important not only because felonies are subject to longer periods of confinement, but also because felony convictions have additional adverse consequences, including use without limitation for impeachment under Proposition 8 in subsequent criminal proceedings, enhancement of sentences, and the general " ' "blight upon the character" ' " of persons convicted of felonies. (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1209 (*Manzy W.*); see *In re Kenneth H.* (1983) 33 Cal.3d 616, 619, fn. 3 (*Kenneth H*).) To ensure that juvenile courts are aware of their discretion to charge wobblers as misdemeanors and that they consciously choose to treat wobblers committed by juveniles as felonies, juvenile courts are required to expressly declare how they are treating such offenses. (*Manzy W.*, at p. 1207.) Specifically, under section 702 of the Welfare and Institutions Code, "[i]f the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony."

Although remand is not automatically required when a juvenile court fails to expressly declare that a wobbler is a felony or misdemeanor, to establish prejudice a juvenile need not show a reasonable probability of a more favorable outcome. (*In re F.M.* (2023) 14 Cal.5th 701, 704, 712-714 (*F.M.*); see also *id*. at pp. 710-711 [challenges under Welfare and Institutions Code section 702 are not forfeited by failure to object at trial].) Instead, in this context, "[t]he key issue is whether the record as a whole establishes that the juvenile court was aware of its discretion to treat the offense as a misdemeanor and to state a misdemeanor-length confinement limit." (*Manzy W.*, *supra*, 14 Cal.4th at

5

p. 1209.)  In making this determination, courts do not presume that the juvenile court was aware of its discretion.  (*Ibid*.)

Here, the juvenile court did not make the declaration required under section 702 of the Welfare and Institutions Code.  When it confirmed Y.D.'s admission that he committed burglary, the court stated in passing that the offense was a "felony."  However, the juvenile court did not state that it was choosing to designate the offense a felony rather than a misdemeanor.  Indeed, the court made no mention of designation.  The Supreme Court has stated that, in applying section 702 of the Welfare and Institutions Code, "the crucial fact is that the court did not state *at any of the hearings* that it found the [offense] to be a felony."  (*Kenneth H*., *supra*, 33 Cal.3d at p. 620, fn. omitted, italics added; see *F.M*., *supra*, 14 Cal.4th at p. 1717; *Manzy W*., *supra*, 14 Cal.4th at p. 1208; *In re Ricky H.* (1981) 30 Cal.3d 176, 191, superseded by statute on other grounds as noted in *In re Michael D.* (1987) 188 Cal.App.3d 1392).

This error was not harmless.  As noted above, under the Supreme Court's decisions, a juvenile court's failure to designate a wobbler is harmless if the record establishes that the court was aware of its discretion to treat the offense as a misdemeanor.  (See *Manzy W*., *supra*, 14 Cal.4th at p. 1209.)  The record does not do so here.  The probation report before the disposition hearing recommended "[t]hat the Court declare this matter to be a felony," but it did not note the option to consider Y.D.'s offense a misdemeanor instead or otherwise allude to the court's discretion.  In addition, at the hearings the juvenile court did not mention that it could treat Y.D.'s offense as a misdemeanor or give any other indication that it was aware of its discretion.  As a consequence, there is no way to be sure that the juvenile court considered whether to treat Y.D.'s offense as a misdemeanor but chose not to do so.

It is true that the minute order suggests that the juvenile court designated Y.D.'s offense as a misdemeanor.  The order is on a form with a printed statement that "charges

6

which may be considered a misdemeanor or a felony [f]or which court has not previously specified the level of offense are now determined to be as follows," and next to the statement a box marked "Felony" was checked. In addition, in text added to the form, the minute order stated that "[m]atter is declared a Felony and minor is continued a Ward of the Juvenile Court." Finally, the form stated that "[t]he Court declare[s] this matter to be a felony." However, as we understand the Supreme Court's decision in *In re F.M.*, *supra*, 14 Cal.5th 701, none of this is sufficient to substitute for a statement by the juvenile court itself exercising or at least recognizing its discretion to designate the offense as a misdemeanor rather than a felony. (See *id*. at p. 717 ["[A] minute order may not 'substitute for a declaration by the juvenile court as to whether an offense is a misdemeanor or a felony.' "].)

Accordingly, we conclude that the dispositional order must be reversed and the case remanded to the juvenile court to make the declaration required by Welfare and Institutions Code section 702.

## B. Youth Center Placement

Y.D. contends the juvenile court abused its discretion by assigning him to a secure facility. We review juvenile placement decisions for abuse of discretion. (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1154.) As explained below, we find no abuse here.

Placement in a secure facility is a last resort. While juvenile court proceedings are intended "to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court" (Welf. & Inst. Code, § 202, subd. (a)), they also are intended "to preserve and strengthen the minor's family ties whenever possible." (*Ibid.*) Consequently, "removing the minor from the custody of his or her parents" is proper "only when necessary for his or her welfare or for the safety and protection of the public." (*Ibid.*) In keeping with these principles, the Welfare and Institutions Code permits juveniles 14 years or older to be committed to a secure youth treatment facility

7

only if "[t]he court has made a finding on the record that a less restrictive, alternative disposition for the ward is unsuitable." (*Id.*, § 875, subd. (a).)

The seriousness of Y.D.'s criminal conduct, and the consequent danger to public safety, justified the juvenile court in finding that a less restrictive placement was unsuitable in this case. Y.D. committed a serious offense. He broke into a firearms store and stole eight weapons, some of which remained unaccounted for by the time of the disposition. In addition, as noted above, the juvenile court found this burglary "very sophisticated" even by adult standards. Moreover, months later, Y.D. committed a second burglary of the firearms store. Consequently, the juvenile court had good reason to conclude that public safety required that Y.D. be placed in a secure facility.

Y.D. does not dispute that he committed serious crimes or that the juvenile court might have found placement in a secure facility needed to ensure public safety. Instead, he argues that there was no evidence that placement was in his best interest and would benefit him. Y.D. asserts that he showed signs of rehabilitation while on probation. For example, his mother told the probation officer that she provided constant supervision and that, after being placed on probation, he had not abused substances. Defense counsel also told the court that Y.D. had transferred from a standard school to an independent studies program where his family could monitor him and his grades had improved so much that he was maintaining a B+ average. We do not question that Y.D. made progress while on probation, and we commend his efforts. However, Y.D. has not shown that the juvenile court abused its discretion in finding that, in light of the seriousness of his crimes, concerns about public safety outweighed those considerations.

Accordingly, we conclude that the juvenile court did not abuse its discretion in placing Y.D. in a secure facility.

## C. Program Condition

In placing Y.D. in a secure facility, the juvenile court imposed a number of terms and conditions, including a requirement that he "participate in and complete any appropriate programs as directed by [his] Probation Officer."  Y.D. argues that this condition is an improper delegation of judicial authority.  Reviewing this issue de novo (*In re Sheena K.* (2007) 40 Cal.4th 875, 888 (*Sheena K.*)), we agree.

The Attorney General contends that Y.D. forfeited this challenge because he failed to object to the condition in question at the dispositional hearing.  However, it is well-settled that probation conditions may be challenged for the first time on appeal if they are challenged as unconstitutional on their face and the challenge therefore presents a pure question of law.  (*Sheena K.*, *supra*, 40 Cal.4th at p. 888.)  Accordingly, we treat Y.D.'s objection as a facial challenge to the constitutionality of the program condition.

Although juvenile courts have greater discretion to formulate probation terms than adult criminal courts (see *In re Victor L.* (2010) 182 Cal.App.4th 902, 910 (*Victor L.*)), their discretion to delegate authority is restricted by the separation-of-powers doctrine.  Under the California Constitution, " '[s]eparation of powers does not mean an entire or complete separation of powers or functions, which would be impracticable, if not impossible.' " (*In re D.N.* (2022) 14 Cal.5th 202, 212 (*D.N.*).)  Thus, a court may delegate to a probation officer authority to "specify the details necessary to effectuate the court's probation conditions." (*People v. Smith* (2022) 79 Cal.App.5th 897, 902 (*Smith*).)  However, the separation-of-powers doctrine limits the delegation of judicial authority to nonjudicial officers, especially in the absence of judicial supervision and review of the exercise of that authority.  (*D.N.*, at pp. 208-209.)  Consequently, a court may not delegate "complete discretion over a significant aspect of the court's legal control." (*Id.* at p. 209.)  To satisfy the separation-of-powers doctrine, a court delegating judicial authority to a probation officer must "dictate the basic policy of a condition of

probation." (*Victor L.*, at p. 919; see also *People v. O'Neal* (2008) 165 Cal.App.4th 1351, 1359 ["the court's order cannot be entirely open-ended"].)

As written, condition 11 impermissibly grants Y.D.'s probation officer unfettered discretion to determine the program or programs that Y.D. must attend and complete. Far from providing any guidance or limit on what programs the probation officer may require Y.D. to attend, the condition simply states that Y.D. is "to participate in and complete *any appropriate programs* as directed by [his] Probation Officer." (Italics added.) This condition empowers the probation officer to require Y.D. to attend and complete programs without any direction on the subject of the program, its nature, its substance, its frequency, or its duration—including whether the programs permit him to remain home (after release from the secure facility) or require him to participate in a residential program. Moreover, the specification that the programs must be "appropriate" does not meaningfully cabin the probation officer's discretion to require participation in programs. Far more limited delegations have been held impermissible. (See *Smith*, *supra*, 79 Cal.App.5th at p. 903 [holding impermissible delegation of authority permitting probation officer to choose between residential and outpatient substance abuse programs]; *People v. Leon* (2010) 181 Cal.App.4th 943, 952 [holding impermissible delegation of authority permitting probation officer to authorize probationer to attend court proceedings and otherwise barring probationer from attending court proceedings unless a party or witness]; see also *United States v. Esparza* (2009) 552 F.3d 1088, 1091 [holding impermissible delegation of authority permitting probation officer to choose whether required treatment would be inpatient or outpatient].)

The Attorney General acknowledges that, considered in isolation, condition 11 "could seem problematically open-ended." However, he asserts that condition 11 must be read in context to permit only programming related to other conditions identifying Y.D.'s needs with respect to subjects such as gang affiliation, seeking work, drug use,

10

and family dynamics.  We are not persuaded.  Condition 11 is one of a dozen standard terms and conditions imposed by the juvenile court that appear at the beginning of the memorandum adopted by the court.  By contrast, all but one of the conditions cited by the Attorney General appear later in the list.  Nothing in condition 11 suggests that the authority it delegates is limited to the subjects identified by the Attorney General.  Nor is condition 11 reasonably read to be limited to the one standard condition identified by the Attorney General.  That condition relates to school attendance, and nothing in that condition or condition 11 suggests that the juvenile court intended to delegate to the probation officer authority to require participation in educational programs.

Accordingly, the juvenile court must modify condition 11 to specify the nature and substance of the programs Y.D. must complete at the probation officer's direction, including whether or not they are to be residential, that is, inpatient or outpatient.

### III.  DISPOSITION

The dispositional order of March 13, 2025 is reversed, and the matter is remanded with directions to the juvenile court (1) to recognize and explicitly exercise its discretion under Welfare and Institutions Code section 702 to designate Y.D.'s offense burglary as a misdemeanor or a felony and (2) to modify probation condition 11 to specify the programs that the probation officer may direct Y.D. to participate in and complete.

11

 

 

 

 

                           _____

                           BROMBERG, J.

 

WE CONCUR:

 

_____

GREENWOOD, P. J.

 

_____

DANNER, J.

 

*People v. Y.D.*
H053097