[Crim. No. 11627. Fourth Dist., Div. One. Mar. 24, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM HENRY DAY, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Handy Horiye and Michael Imhoff for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Richard D. Garske, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STANIFORTH, J.**—Defendant Day pleaded guilty to charges of robbery (Pen. Code, § 211) while armed with a firearm (Pen. Code, § 12022, subd. (a), count three of the indictment) and admitted suffering a prior felony conviction for forgery. The jury then found him guilty of first degree murder (Pen. Code, § 187, count one) and of robbery (Pen. Code, § 211, count two). Day was sentenced to twenty-five years to life on the murder charge and to a consecutive upper term of five years plus one-year enhancement on the robbery (count three) charges. The court imposed the middle term of three years on the count two robbery but stayed execution pursuant to Penal Code section 654.

### FACTS

At about 1 a.m. of September 10, 1979, Day and a companion entered the 7-Eleven store, San Diego, and robbed the clerk, Gagne. One robber had a gun and kicked Gagne when he was down. Gagne had triggered the alarm when he opened the cash register. Day was captured as he ran from the store. He was identified by Gagne as the robber who did not have a gun. Day waived his *Miranda* rights and told Officer Navarro the other robber was Gregg Thomas.

About 8 a.m. of that same day, the body of Donald Stepatt was found in a car in the 2900 block of Juniper Street, San Diego, two blocks from the robbed 7-Eleven store. The deceased had no wallet or money on his person and blood was on his face and arms. The police saw droplets of blood and a large pool of blood across the street from the car and shoeprints with a herringbone pattern outlined in the blood leading away from the killing scene. The victim was found to have

head, chest and abdomen injuries. The cause of death was a massive hemorrhage resulting from these injuries. An injury to the forehead was thought to be caused by a heavy object, possibly metalic.

About 9:20 a.m. that day, Detective Collins interviewed Day—now in the jail—Day again admitted he and Gregg had robbed the 7-Eleven. At this time Collins noted blood on Day's tennis shoes. Officer Collins returned about 1 p.m. of that day to ask further questions; Day then agreed to allow Collins to take his shoes to compare with the blood of that of the victim of the 7-Eleven robbery.

Two hours later, another detective, Thwing, interviewed Day and told him his shoes bore a sole pattern similar to the bloody shoe print found near the Juniper Street killing-robbery site. Day first denied involvement in the street robbery and killing. But when questioned concerning events surrounding the 7-Eleven market robbery, Day related that two other persons, named Stuff and Gregg "did the old man in" while he (Day) sat in the car. Day said Gregg had the old man's wallet; they then drove to the 7-Eleven store where Gregg and Day robbed Gagne. Later Day said there was no person named Stuff.

Schoonover, a criminologist, testified the shoe pattern on Day's shoe was consistent with the imprint on the deceased's face. Schoonover also concluded the imprint left in the blood on the sidewalk was consistent with the sole pattern on Day's shoe. A comparison of the blood drawn from Day, the deceased and the 7-Eleven clerk showed the blood stains on Day's shoes were of the blood type belonging to the deceased victim, not to Day or the 7-Eleven clerk.

Day appeals the judgment, contending the court's refusal to instruct on second degree murder was prejudicial error. He asserts this error coupled with failure to fully instruct on the felony-murder rule denied him the right to have the jury decide every material issue. Day contends further that the imposition of *full sentence* on the consecutive term to the indeterminate sentence was error.

### DISCUSSION

### I

Day requested instructions on second degree murder, voluntary manslaughter, premeditation and malice as well as lesser included offenses.

The court, however, determined that only first degree felony-murder instructions applied and refused to give the instructions. ■ This, Day contends, is prejudicial error. Day argues the other man, Gregg, had a motive to assault the victim, not necessarily to kill him; that robbery was an afterthought.

■ Any unlawful killing, intentional or otherwise, committed in the perpetration of robbery or burglary for the intended purpose of theft, constitutes the crime of first degree murder. (*People* v. *Ross* (1979) 92 Cal.App.3d 391, 402 [154 Cal.Rptr. 783].) ■ Although the trial court must instruct the jury on general principles of law relevant to the issues raised by the evidence, instructions based solely on conjecture and speculation are not to be given. (*People* v. *Perry* (1972) 7 Cal.3d 756, 788 [103 Cal.Rptr. 161, 499 P.2d 129].) ■ The facts in this case clearly establish the question for the jury was felony murder based upon robbery or nothing. No other factual basis was proffered. Day's argument is based upon conjecture. It is not contended there was no robbery of Steppat, the deceased, or if there was, that he (Day) was not involved. Day argues that evidence of an intent. for the attack *other than robbery* was a sufficient factual base to support his requested instruction. The difficulty with this contention is there is no evidence in this record to suggest any basis for the attack on Stepatt other than robbery. Speculation is not a basis for giving of instructions. We find no error in the refusal to give the proffered instruction.

## II

■ Day next contends the imposition of the five-year upper term to run consecutive to the indeterminate sentence of twenty-five years to life was improper. Day argues the term for count three should have been treated as a *subordinate term* resulting in a sentence of one-third of the middle term of three years, thus a consecutive term of *one* year only. He reaches this conclusion by interpreting the legislative intent of the pertinent sentencing statutes to mean that a determinate sentence that is made consecutive to an indeterminate sentence must be computed the same as consecutive determinate sentences, i.e., one-third of the middle term.

The Legislature has clearly distinguished indeterminate life sentences and determinate sentences under Penal Code sections 1170 and 1170.1 and provides that the determinate sentence be served first under Penal Code section 669. However, there is no provision designating one term

as principal and the other a subordinate term. The legislative intent to treat the term as independent is clear. Penal Code section 1168, subdivision (b), provides that the court imposing the sentence shall not fix the term or duration for a period of imprisonment. Penal Code section 669 distinguishes life terms from any determinate term of imprisonment imposed pursuant to sections 1170 and 1170.1.

The legislative intent is further spelled out in California Rules of Court, rule 451: "(a) When a defendant is sentenced under section 1170 and the sentence is to run consecutively to a sentence imposed under section 1168 in the same or another proceeding, the judgment shall specify the determinate term imposed under section 1170 computed without reference to the indeterminate sentence, shall order that the determinate term shall be served consecutive to the sentence under section 1168, and shall identify the proceedings in which the indeterminate sentence was imposed. . . ."

Day contends that rule 451 does not apply because Penal Code section 1168 applies only to crimes committed before July 1, 1977. This is incorrect. Penal Code section 1170, subdivision (a)(2), states: " . . . Nothing in this article shall affect any provision of law which . . . expressly provides for imprisonment in the state prison for life. . . ." (See *People* v. *Walling* (1980) 105 Cal.App.3d 893, 896 [164 Cal.Rptr. 681].) Day was properly given a one-year enhancement pursuant to section 12022, subdivision (a). There was no error in the sentence imposed.

The judgment is affirmed in all respects.

Brown (Gerald), P. J., and Cologne, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 2, 1981. Bird, C. J., was of the opinion that the petition should be granted.