[No. B034698. Second Dist., Div. Two. July 31, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ABEL JOSEPH REYES, Defendant and Appellant.

**COUNSEL**

Dennis A. Fischer and Alan S. Yockelson, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Assistant Attorney General, Richard L. Walker and Karen Bissonnette, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—Abel Joseph Reyes appeals from his sentence after a resentencing hearing. He claims: 1. Increasing his determinate sentence seven years and two attempts after his initial sentencing, when he had already completed the determinate portion of his sentence, violated his due process and speedy trial rights; respondent is estopped from disagreeing.

2. The trial court erred by imposing a three-year enhancement pursuant to Penal Code section 12022.7.

We affirm.

On the evening of October 5-6, 1979, appellant shot and killed Jesse Hernandez with a shotgun. With the same shotgun he shot Jesse's brother, Raymond, in the face. Raymond survived.

Appellant was found guilty in count I of second degree murder; the allegation that he personally used a firearm was found to be true. He was also found guilty in count II of assault with intent to commit murder; the allegations that he personally used a firearm and that he inflicted great bodily injury were found to be true.

Sentencing was held on February 6, 1981. The court stated that previously the punishment for second degree murder had been five, seven, or eleven years of imprisonment. The court continued, erroneously, that on November 4, *1979,* the penalty had been altered by initiative to 15 years to life imprisonment. Believing that the initiative had been approved after the crimes had been committed, and thus could not be applied to appellant, the court sentenced appellant to the "high term" of 11 years, plus a 2-year enhancement for the firearm allegation. On count II the court imposed one-third of the mid-term or one and one-third years, plus one-third of the great bodily injury enhancement, or one year. This term was ordered to run consecutively. The firearm use enhancement on count II was stayed. Thus, the total sentence imposed was 15⅓ years, the greatest sentence the court considered it could impose.

On March 19, 1981, the People moved to resentence appellant, having finally noticed that the penalty for second degree murder had been increased by an initiative measure in November *1978,* not 1979. Since the crimes were committed in October 1979, after the passage of the initiative, the court was required to use the new sentencing scheme.

Reiterating its intention to deliver the maximum possible sentence, on March 31, 1981, the court sentenced appellant to 15 years to life, plus a 2-year firearm enhancement, on count I. On count II the court sentenced appellant to the mid-term of four years, with a three-year great bodily injury enhancement, to run consecutively. Two-thirds of the count II sentence was stayed, the stay to become permanent upon completion of the sentence on count I. The count II sentence would thus be two and one-third years, the total sentence amounting to nineteen and one-third years to life.

On September 17, 1982, Division Five of this court filed its opinion in appellant's first appeal. Among appellant's contentions was a claim of sentencing error. The appellate court dealt with the claim as follows: "Defendant contends that there was error in resentencing defendant because at the first sentencing aggravating factors not present in the record were used. At the first sentencing the term imposed was 15 years and 4 months. The second sentence was for 19 years and 4 months to life. The claimed error occurred at the first sentencing. It is conceded there was error but that it was properly corrected at the second sentencing. There is no showing that

the referred to aggravating factors were considered at the second sentencing, hence, no error is shown."

Almost four years later, on July 31, 1986, the Department of Corrections wrote to the trial court to suggest that the corrected sentence might still be incorrect. The abstract of judgment indicated a term of seven years on count II, while the minute order and reporter's transcript indicated that two-thirds of that sentence was stayed. The department opined that the seven-year sentence would be correct.

The department wrote again on November 27, 1986, to press its concerns.

On March 25, 1988, the trial court corrected the sentence as follows: on count II appellant was sentenced to the midterm of four years plus a three-year great bodily injury enhancement, no part of which was stayed. The sentence on count I (17 years to life), which had been previously calculated correctly, was ordered to run consecutively to the sentence on count II, the total sentence being 24 years to life.

This appeal followed.

Appellant's sentence required recalculation because at the March 31, 1981, sentencing hearing the trial court had viewed the sentence on count II as the "subordinate" term, as that notion is used in Penal Code section 1170.1. That section demands that the "principal" term shall be the greatest term of imprisonment, including enhancements, imposed for any of the crimes; the "subordinate" term in general shall be one-third of the midterm prescribed for the other crime, excluding enhancements.

■ However, this scheme fully applies only when all terms of imprisonment are "determinate," i.e., of specified duration. A life sentence is "indeterminate," i.e., not for a fixed period. When a defendant is sentenced to both a determinate and an indeterminate sentence, the determinate sentence is served first. Nonetheless, neither term is "principal" or "subordinate." They are to be considered and calculated independently of one another. (*People* v. *Day* (1981) 117 Cal.App.3d 932, 936-937 [173 Cal.Rptr. 9].) Thus, if count II is not subordinate to count I, the period of imprisonment is not limited to one-third of the midterm. The full term may be imposed.

Appellant does not quarrel with this analysis. Instead, he attacks from the flank: he asserts that increasing his determinate sentence on the third try, seven years after he was first sentenced and after he had finished the determinate term first imposed, violated his rights to due process and a speedy trial.

■ The due process claim is not well-articulated; it appears to be an appeal to the judicial sense of fundamental fairness. Appellant seems to feel trifled with. He is upset that the error was not spotted sooner by the prosecution, the trial court, the Court of Appeal, nor by the Department of Corrections, despite ample opportunity. The heart of his complaint is that his possible parole date will be delayed, although he had completed the original determinate sentence and started working on his indeterminate sentence.

However, we believe that the disappointment appellant may experience in this situation is not so great as to overpower the well-settled rule of law that an illegal sentence may be corrected at any time, even if the new sentence is more severe than the original sentence. (*In re Ricky H.* (1981) 30 Cal.3d 176, 191 [178 Cal.Rptr. 324, 636 P.2d 13].) In other words, appellant's plight is not so fundamentally unfair as to signify a due process violation.

Appellant cites cases in which courts refused to apply a corrected sentence. (*People* v. *Tanner* (1979) 24 Cal.3d 514 [156 Cal.Rptr. 450, 596 P.2d 328]; *Johnson* v. *Williford* (9th Cir. 1982) 682 F.2d 868; *Shields* v. *Beto* (5th Cir. 1967) 370 F.2d 1003; *United States* v. *Merritt* (D.D.C. 1979) 478 F.Supp. 804.) None of these cases is on point, because in each of them the prisoner had been *released* before the sentencing or parole error was detected. The question in these cases was therefore one of reincarceration after a period of freedom, in some cases a freedom of great duration, which would raise vastly different expectations and considerations. We are unpersuaded by appellant's attempts to minimize the distinction between sentences corrected while the prisoner is in prison and those corrected after the prisoner has been released. The emotional impact, which seems to be appellant's major concern, is quite different. We conclude that the exception should not be extended to prisoners who remain incarcerated.

■ Appellant's estoppel argument is similarly unpersuasive. ■
■ An essential element of estoppel is detrimental reliance. (*Johnson* v. *Williford, supra,* 682 F.2d at p. 872.) Reliance means some sort of change of position. Appellant has not altered his position in reliance on the possibility of a certain parole date, or on anything else. Thus, no estoppel.

■ Appellant's argument that he was deprived of a speedy trial also fails to find its mark. While prompt sentencing is encompassed in the right to a speedy trial (*People* v. *Mahan* (1980) 111 Cal.App.3d 28, 32 [168 Cal.Rptr. 428]), appellant *was* promptly sentenced. It is the *correction* of his sentence which has been so unfortunately protracted. Appellant's argument amounts to an assault, from another angle, on the principle that an unau-

thorized sentence remains subject to repair whenever discovered. The principle is sound; we therefore repulse the gambit.

We conclude that it was permissible to make appellant's sentence conform to the law's demands.

■ Appellant's second contention is that the trial court erred in adding to count II the full three-year enhancement for great bodily injury. The full enhancement was imposed pursuant to Penal Code section 1170.1, subdivision (a), which in 1979 stated in part: "The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment . . . *and shall exclude any enhancements when the consecutive offense is not listed in subdivision (c) of Section 667.5.*" In other words, if the subordinate offense is listed in section 667.5, subdivision (c), the enhancement may be imposed as well; otherwise, it may not.

Former Penal Code section 217, assault with intent to commit murder, was not one of the violent felonies specifically enumerated in section 667.5, subdivision (c). Thus, when the subordinate term is for a violation of former section 217, no enhancement may be imposed. (*People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396]; *In re Ditsch* (1984) 162 Cal.App.3d 578, 583 [209 Cal.Rptr. 12].)

The rule of *Harvey* and *Ditsch* only applies to *subordinate* terms. As noted above, when one term is determinate and the other is indeterminate, neither is principal or subordinate; instead, each is calculated without reference to the other. It is not significant, as appellant suggests, that all enhancements must be served prior to the commencement of the indeterminate term (Pen. Code, § 669); the fact that the enhancement is determinate does not render it subordinate within the meaning of section 1170.1.

Thus, the great bodily injury enhancement was properly imposed.

One may hope that the story of appellant's sentence will end here. The moral of this story is that the sentencing statutes are mind-numbingly complicated and, by virtue of continued legislative tinkering, not likely to soon become any easier to apply. As the trial judge in this case remarked: "I regard it as one of the principal credits to my professional career that I had nothing to do with designing the determinate sentencing law." Such frustration is widely spread. In fact this case is relatively simple: there were only two crimes, neither of which was a sexual offense, an area which usually compels even more elaborate sentencing computations.

The frequency with which both simple and vexatious sentencing questions are raised on appeal strongly suggests that the Legislature can and

should undertake with the help of bench and bar a solid comprehensive overhaul of the system to help all potential defendants and the public generally.

The judgment (correction of sentence) is affirmed.

Compton, J., and Fukuto, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 15, 1989.