Filed 1/28/14  P. v. Carter CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Appellant,<br><br>v.<br><br>CHAVIS DAVID CARTER,<br><br>       Defendant and Respondent. | B244364<br>(Los Angeles County<br>Super. Ct. No. SA078887) |

APPEAL from a judgment of the Superior Court of Los Angeles, Kathryn A. Solorzano, Judge.  Affirmed.

Dale E. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Nima Razfar, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Chavis David Carter challenges his convictions for robbery and grand theft. He contends the trial court contravened his statutory right to a speedy trial, admitted identification evidence based on an unduly suggestive photographic lineup, and imposed an improper sentence. We reject his challenges and affirm.

## RELEVANT PROCEDURAL HISTORY

On November 2, 2011, an information was filed, charging appellant in count 1 with grand theft (Pen. Code, § 487, subd. (c)), and in count 2 with robbery (Pen. Code, § 211).[1] Accompanying the charges were allegations that appellant had suffered a prior felony conviction constituting a serious felony (§ 667, subd. (a)(1)) and a strike under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). Appellant pleaded not guilty and denied the special allegations.[2]

A jury found appellant guilty as charged. On September 21, 2012, after appellant admitted his prior felony conviction, the trial court imposed a cumulative sentence of 11 years, comprising an 11-year term on count 2 and a concurrent 16-month term on count 1. On September 27, 2012, the court recalled the sentence on its own motion upon discovering that the Three Strikes law required the imposition of a consecutive sentence on count 1. The court re-sentenced appellant to a total term of 11 years, 8 months. This appeal followed.

---

[1] All further statutory citations are to the Penal Code, unless otherwise indicated.

[2] On March 15, 2012, after appellant initially entered his plea, the prosecution announced that it was unable to proceed, and the trial court granted appellant's motion to dismiss the action. Pursuant to a stipulation of the parties, appellant was re-arraigned on the same information.

**FACTUAL BACKGROUND**

A. *Prosecution Evidence*

    1. *Robbery (Count 2)*

On September 30, 2011, Jane Pak parked her car on Robertson Boulevard near Pico Boulevard in order to shop at a Walgreen's store. As she walked toward the store's entrance, she saw appellant leaning against the store's exterior wall. Appellant then walked across her path and looked at her as she entered the store.

After 15 to 20 minutes, Pak left the store. When she checked her cell phone for voice mails, someone approached her from behind and seized her phone and hair, tearing clumps of hair from her scalp. She recognized her assailant as appellant on the basis of his green shirt and a view of him in her peripheral vision. Appellant ran with her phone to a bicycle propped up at a bus bench, and rode away. Shortly afterward, Pak called 911.

Pak told the investigating officers that her assailant was a black male approximately six feet, two inches tall, weighing 180 pounds, and wearing a green jacket.[3] Later, after appellant's arrest, Pak identified him as her assailant in a six-pack photographic lineup.[4]

---

[3] Shortly after the incident, police officers drove Pak to the location of an individual who had been detained. Pak told the officers that the detained individual was not her assailant.

[4] Aaron Cohen was standing near the scene of the robbery when he heard Pak scream. When he saw a man fleeing on a bicycle, he got into his car and followed the man to a medical marijuana store, which the man entered. Cohen then returned to the scene of the robbery, where he talked to investigating officers. At trial, Cohen described the fleeing man as an African-American man approximately 6 feet tall, but did not identify appellant as the man.

3

## 2. *Grand Theft (Count 1)*

On October 1, 2011, Laurel Beck stood on a sidewalk on La Cienega Boulevard, waiting for a ride. She was texting on her cell phone when she noticed appellant riding on a bicycle toward her. As appellant passed her, he grabbed her cell phone. Beck chased him, but could not catch him.

Dale Gardner and his brother-in-law were walking on La Cienega Boulevard when an African-American man rode past him on a bicycle. Gardner watched as the man grabbed Beck's cell phone and she ran after him. When she failed to catch him, Beck walked back in the direction of Gardner and his brother-in-law. The two men met up with Beck, asked if she was ok, and then used one of their cell phones to call 911, with both Gardner and Beck participating in the call.

Responding police officers soon saw appellant riding a bicycle in the vicinity and detained him. Upon being detained, appellant said, "They're saying I robbed somebody." Approximately 45 minutes after the incident, officers drove Beck to appellant's location for a field showup. Beck remained in the patrol car, which was parked approximately 40 feet from appellant. She recognized appellant and identified him as the person who took her cell phone.

According to Gardner, shortly after the incident, officers drove him to a location for a field showup. Gardner remained seated in the patrol car while he was shown a man in handcuffs, standing approximately 50 feet from the vehicle. Gardner identified the man, based on his clothing, as the bicyclist who grabbed Beck's cell phone. At trial, Gardner testified that appellant was the man he recognized during the field showup.

4

B. *Defense Evidence*

Mitchell Eisen, a psychologist, testified regarding factors that affect the reliability of eye witnesses. According to Eisen, a witness's ability to recognize an individual improves in proportion to the length of time the witness sees the individual's face. That ability is diminished by delays in making the identification. In addition, witnesses often find it difficult to identify a person of a different race.

Eisen also testified that circumstances related to identification procedures may reduce their reliability. Field showups involving detainees in handcuffs may encourage witnesses to identify them as "the bad guy." Furthermore, photographic six-pack lineups discourage reliable identifications when an individual stands out.[5] Eisen opined that displaying an individual in a jail uniform would affect a six-pack's fairness. In addition, he opined that the manner in which the six-pack is presented may influence a witness to select a particular individual.

## DISCUSSION

Appellant contends that the trial court (1) violated his statutory right to a speedy trial, (2) erroneously admitted Pak's identification of him in a photographic lineup, and (3) improperly imposed a more severe sentence after vacating his original sentence. For the reasons discussed below, we reject his contentions.

---

[5] In addition to Eisen, appellant called Los Angeles Police Department Officer Michael Tilden, who testified that during the field showup involving Gardner, appellant's bicycle was placed near appellant. Tilden stated that during the field showup, Gardner said that he recognized appellant by his clothing, and that he recognized appellant's bicycle.

A.  *Speedy Trial Right*

Appellant contends the trial court contravened his statutory right to a speedy trial by granting a continuance to permit Pak to testify.

1.  *Governing Principles*

The Sixth Amendment of the United States Constitution guarantees the right to a speedy trial, as does the parallel but independent provision in article I, section 15 of the California Constitution.  (*People v. Johnson* (1980) 26 Cal.3d 557, 562-563 (*Johnson*).)  Section 1382 interprets the state constitutional right to a speedy trial in actions charging defendants with felonies, misdemeanors, and infractions.  (*Johnson, supra,* 26 Cal.3d at p. 561.)  The statute provides that absent a showing of good cause, defendants are entitled to a dismissal of the charges against them when trial is not commenced within specified periods.  (§ 1382, subds. (a)(2), (a)(3).)  In felony cases, the statute requires the defendant to be brought to trial within 60 days of the filing of the information.  (*Johnson*, *supra*, at p. 561; § 1382, subd. (a)(2).)

Under section 1382, the trial court's determination of good cause for a continuance is reviewed for an abuse of discretion.  (*Johnson*, *supra*, 26 Cal.3d at p. 570.)  As explained in *Owens v. Superior Court* (1980) 28 Cal.3d 238, 250-251 (*Owens*), to obtain a continuance for purposes of securing a witness's testimony, the moving party must show:  "'(1) That the movant has exercised due diligence in an attempt to secure the attendance of the witness at the trial by legal means; (2) that the expected testimony is material; (3) that it is not merely cumulative; (4) that it can be obtained within a reasonable time; and (5) that the facts to which the witness will testify cannot otherwise be proven.'"  (Quoting *People* v. *Wilson* (1965) 235 Cal.App.2d 266, 273.)  Although section 1050 permits a trial court to

6

consider "'the general convenience and prior commitments of all witnesses'" in ordering a continuance, the *Owens* factors must be satisfied when the continuance implicates the defendant's speedy trial right under section 1382.  (*Baustert v. Superior Court* (2005) 129 Cal.App.4th 1269, 1279 (*Baustert*).)

### 2.  *Underlying Proceedings*

On May 4, 2012, the date set for trial, appellant failed to appear for a sufficient reason.  Pak was present under a subpoena.  The trial court proposed re-setting the trial for May 11, day 57 of the 60-day statutory period.  When the court told Pak that she would probably testify between May 14 and May 17, Pak replied that she had paid for a trip to the east coast from May 14 to May 19.  After the prosecutor proposed a continuance, the court set a hearing on the matter for May 7, and ordered Pak to remain "on call."

On May 7, appellant's counsel opposed the request for a continuance, arguing that it would delay the trial beyond the 60-day period, and was sought merely for Pak's convenience.  The court granted the request and set the trial for May 21, noting the continuance was not lengthy and that section 1050 permitted it to consider the convenience and prior commitments of witnesses.  In finding good cause for a continuance, the court stated:  "Obviously, there was due diligence because [Pak] was served and [was] present in the courtroom."

### 3.  *Analysis*

The focus of our inquiry is on the existence of due diligence, as the record establishes the presence of the other *Owens* factors:  Pak's testimony was critical to the prosecution's case regarding the robbery charged in count 2, and the continuance was relatively brief.  Under section 1382, the fact that a key witness

will be on vacation during the trial is not, by itself, good cause for a continuance. (*Baustert*, *supra*, 129 Cal.App.4th at p. 1277.)  When a material witness takes, or plans to take, a vacation during the trial, the propriety of a continuance usually hinges on whether the prosecution placed the witness under a subpoena.  (*Jensen v. Superior Court* (2008) 160 Cal.App.4th 266, 270-275.)  This is because "[a] prosecutor who issues subpoenas is exercising the requisite due diligence in securing the attendance of witnesses at trial, while a prosecutor who does not issue subpoenas has not made sufficient effort to ensure their presence."  (*Id*. at p. 271.)

Our research has disclosed no published case addressing whether a continuance is properly granted when the prosecutor places a witness under subpoena, and then seeks a continuance to accommodate the witness's pre-existing travel plans without releasing the witness.  Nonetheless, in cases in which a witness was subpoenaed but took a vacation instead of appearing at trial, appellate courts have repeatedly found good cause for a continuance on the ground that the prosecutor exercised due diligence.  The rationale underlying these holdings is that it would be "unreasonable and unwarranted" to dismiss "the case of a litigant who has no advance knowledge of a witness' default . . . ."  (*Gaines v. Municipal Court* (1980) 101 Cal.App.3d 556, 558-560 [finding good cause for continuance of trial when police officer under subpoena took vacation during trial]; see *Mendez v. Superior Court* (2008) 162 Cal.App.4th 827, 835-836 [same]; *Jensen v. Superior Court*, *supra*, 160 Cal.App.4th at pp. 270-275 [same].)

In contrast, in cases where the prosecution failed to place the witness under a subpoena and sought a continuance, appellate courts have found a lack of due diligence.  (See *Jensen v. Superior Court*, *supra*, 160 Cal.App.4th at p. 271 [discussing cases].)  Thus, in *Baustert*, the prosecutor subpoenaed a police officer before trial, but voluntarily released him from the subpoena while seeking a

8

continuance to allow him to take a vacation.  When the trial court granted the continuance, the appellate court reversed, concluding that no good cause had been shown.  (*Baustert, supra*, 129 Cal.App.4th at p. 1278; see also *Cunningham v. Municipal Court* (1976) 62 Cal.App.3d 153, 155-156 [no good cause shown when prosecutor permitted officer to take vacation, rather than place him under subpoena]; *Pickett v. Superior Court* (1970) 12 Cal.App.3d 1158, 1162 [no good cause shown when prosecutor permitted key witnesses to leave state, without placing them under subpoena].)

We conclude the trial court did not abuse its discretion in continuing appellant's trial.  To begin, the court properly found the existence of due diligence.  Generally, the prosecution is obliged only to use "reasonable efforts" to procure a witness.  (*People v. Cummings* (1993) 4 Cal.4th 1233, 1298.)  Here, the prosecutor placed Pak under a subpoena before trial, and never released her from it while seeking the continuance.  The prosecutor thus made sufficient efforts to secure Pak's appearance at trial, regardless of whether the continuance was granted or denied.

Nor do we see any abuse of discretion in the court's determination that there was good cause for a continuance.  In cases implicating the defendant's statutory speedy trial right, the court may consider the witness's prior commitments, provided the *Owens* factors are satisfied (see pt. A.1. *ante*).  As noted, those factors were present here.  Moreover, if the continuance had been denied, the prosecutor would in all likelihood have been entitled to a continuance during the trial, had Pak taken her vacation despite the subpoena.  To avoid the uncertainties attending such an interruption in the trial, the court reasonably ordered a brief continuance.  In sum, the trial court did not contravene appellant's statutory speedy trial right in ordering the continuance.

B.  *Photographic Lineup*

Appellant contends the trial court erred in admitting Pak's identification of him in a photographic six-pack lineup.  He argues that the six-pack was unduly suggestive because he was the only individual shown wearing blue jail inmate clothing.

### 1.  *Governing Principles*

"In order to determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the witness's degree of attention at the time of offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification.  [Citations.]"  (*People v. Cunningham* (2001) 25 Cal.4th 926, 989.)  An identification is constitutionally unreliable only when the answer to the first question is, "[Y]es," and the answer to the second question is, "[N]o."  (*People v. Gordon* (1990) 50 Cal.3d 1223, 1242, overruled on another point in *People v. Edwards* (1991) 54 Cal.3d 787, 835.)  We review the trial court's findings of historical fact under a deferential standard, but determine independently whether the pretrial identification procedure was unduly suggestive.  (*People v. Kennedy* (2005) 36 Cal.4th 595, 608-609, disapproved on another ground in *People v. Williams* (2010) 49 Cal.4th 405, 459.)

"Generally, a pretrial procedure will only be deemed unfair if it suggests in advance of a witness's identification the identity of the person suspected by the

police. [Citation.] However, there is no requirement that a defendant in a lineup, either in person or by photo, be surrounded by others nearly identical in appearance. [Citation.] Nor is the validity of a photographic lineup considered unconstitutional simply where one suspect's photograph is much more distinguishable from the others in the lineup. [Citations].)" (*People v. Brandon* (1995) 32 Cal.App.4th 1033, 1052.)

### 2. *Underlying Proceedings*

Appellant's trial was initially assigned to Judge Edward B. Moreton, Jr. Prior to trial, appellant sought to suppress Pak's identification, arguing that he was the only person shown in "county blues" in the six-pack. After examining the six-pack, Judge Moreton concluded that the six-pack and Pak's identification were admissible. Judge Morton noted that the six-pack showed appellant wearing a blue top with no numbers. Judge Moreton also observed that four of the other five individuals wore white or black t-shirts, and the remaining individual was shirtless. Although Judge Moreton recognized appellant's top as jail clothing due to his familiarity with jail inmates, he saw nothing in appellant's photo that might signal to a "regular person" that appellant was in jail.

At trial, Pak testified that she saw appellant before she entered the Walgreen's store. Although Pak initially stated that she did not see her assailant's face, she later clarified that she saw it in her peripheral vision. Pak further testified that before she viewed the photographic lineup, she was told that police officers had arrested a suspect, whose photo might or might not be included in the six-pack. When Pak identified appellant as her assailant, she made the following explanatory statement: "I chose [appellant's photo] because I recognize[d] his eyes and I recall[ed] the facial features. I briefly made eye contact with him.

11

While he was attacking me, we were in very close proximity. . . ." According to Pak, she had never heard the term "county blues." Moreover, when Pak was asked which colors she associated with jail uniforms due to films or documentaries, she replied, "[o]range" and "black-and-white striped."

After Pak testified, Judge Moreton was injured in an accident, and appellant's trial was reassigned to Judge Katherine Solorzano. When Eisen testified as an expert witness, defense counsel sought leave to ask Eisen whether the six-pack that Pak viewed was "inherently suggestive" due to appellant's jail attire. Judge Solorzano rejected the request, concluding that appellant's blue top bore no indications that it was jail clothing.

### 3. *Analysis*

We find dispositive guidance regarding appellant's contention from *People v. Carter* (2005) 36 Cal.4th 1114 (*Carter*) and *People v. Gonzalez* (2006) 38 Cal.4th 932 (*Gonzalez*). In *Carter,* the defendant argued that the six-pack was unduly suggestive because he was the sole person wearing an orange shirt that resembled a "'jail jumpsuit,'" and only his photo was of "'booking-photograph quality.'" (*Carter, supra,* 36 Cal.4th at p. 1162.) Our Supreme Court rejected the contention, concluding that the six-pack showed similar looking individuals wearing shirts of different types, and that nothing in the defendant's photo identified his shirt as an inmate's uniform. (*Id*. at pp. 1162-1163.)

In *Gonzalez*, the defendant maintained that the six-pack was unduly suggestive because he was the only individual wearing "'gang type'" clothing, he was shown with a "'droopy eye,'" and his photo was discolored. (*Gonzalez, supra*, 38 Cal.4th at p. 943.) After the trial court admitted the identification based

12

on the six-pack, our Supreme Court affirmed, concluding that nothing in the six-pack suggested that the defendant should be selected.  (*Ibid*.)

We reach the same conclusion here.  The photographic lineup Pak viewed shows six similar looking individuals, five wearing t-shirts or tops, and one bare chested.  No feature of appellant's top identifies it as part of a jail uniform:  it is distinguishable from the other individuals' t-shirts only with respect to its color, looser fit, and slightly deeper neckline.  In our view, nothing in the six-pack improperly highlights appellant or is unduly suggestive.

Appellant also maintains that the six-pack was unduly suggestive because it permitted Pak to choose appellant by an improper process of elimination.  He argues that because she did not see her assailant's face directly, she relied on some dissimilarities among the individuals in the six-pack and on the fact that appellant was shown in a jail uniform.  Appellant notes that after the robbery, Pak told officers that her assailant had a dark complexion and hair an inch and a half long.  Because the only dark complected person in the six-pack other than appellant had braided hair and did not wear jail clothing, appellant contends the six-pack "marked [him] for identification."

Because appellant failed to raise this contention in seeking to exclude Pak's identification before the trial court, he failed to preserve it for appeal.  Moreover, we would reject it were we to address it.  Although Pak appeared initially to deny that she saw her assailant's face, she later clarified that she saw it in her peripheral vision.  In addition, Pak testified that she was told that the six-pack might or might not depict the person in custody, that she was unaware that jail inmates wore blue, and that she recognized appellant on the basis of his eyes and facial features.  Accordingly, viewed in the light most favorable to the judgment, the facts

13

surrounding Pak's identification disclose no denial of due process. In sum, the trial court did not err in admitting Pak's identification of appellant.

### C. *Re-Sentencing*

Appellant contends the trial court erred in imposing a greater sentence after vacating his original sentence. He argues that the modified sentence contravened the double jeopardy provision of the California Constitution (Cal. Const., art. I., § 15). We disagree.

Generally, trial courts may vacate a legally unauthorized sentence to correct sentencing error. (*People v. Reyes* (1989) 212 Cal.App.3d 852, 857.) Here, the trial court initially imposed a total sentence of 11 years, after denying appellant's motion to strike his prior "strike," for purposes of the Three Strike law. The court identified as the principal count the robbery conviction (count 2), selected the three-year middle term, doubled that term pursuant to the Three Strikes law (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), and added a five-year enhancement (§ 667, subd. (a)(1).) Regarding the conviction for grand theft (count 1), the court selected the two-year middle term, reduced that term to eight months as a subordinate term (§ 1170.1, subd. (a)), doubled it pursuant to the Three Strikes law, and ordered it to run concurrently.

Later, the trial court vacated the original sentence, concluding that the Three Strikes law mandated consecutive terms on the two counts (§§ 667, subd. (c)(6), 1170.12, subd. (a)(6)). In imposing a total sentence of 11 years and 8 months, the court made no modification to the sentence for the robbery. However, the court struck appellant's prior strike for purposes of imposing a sentence for the grand theft (*People v. Garcia* (1999) 20 Cal.4th 490, 503-504), thereby reducing the

term for that offense to 8 months, which the court ordered to run consecutively to the term for the robbery.

We see no error in the modified sentence. Notwithstanding the double jeopardy provision of the California Constitution, a trial court may properly impose a more severe sentence when the original sentence was not legally authorized. (*People v. Reyes*, *supra*, 212 Cal.App.3d at p. 857.) In *People v. Serrato* (1973) 9 Cal.3d 753, 764 (*Serrato*), disapproved on another ground in *People v. Fosselman* (1983) 33 Cal.3d 572, 583, footnote 1, our Supreme Court explained that when a sentence is legally unauthorized, the guarantee against double jeopardy does not bar the imposition of a proper sentence, "even though it is more severe than the original unauthorized pronouncement." Under the *Serrato* rule, in correcting an unauthorized sentence, the trial court may exercise its discretion when appropriate, even though the result is a longer sentence than that originally imposed. (*People v. Irvin* (1991) 230 Cal.App.3d 180, 190-193 [after fashioning unauthorized sentence by staying enhancement, the trial court had the discretion to correct the error by imposing or striking enhancement, as permitted by governing statute].)

In view of *Serrato*, the trial court properly imposed consecutive terms on appellant's offenses and exercised its discretion to reduce the term for the grand theft. It is well established that the double jeopardy guarantee does not bar a court from correcting the type of error present in appellant's unauthorized sentence, namely, the failure to impose mandatory consecutive terms. Indeed, in *Serrato*, the Supreme Court illustrated the rule it set forth by pointing to *In re Sandel* (1966) 64 Cal.2d 412, 417-419, a case in which the Supreme Court rectified an error of precisely that type. (*Serrato*, *supra*, 9 Cal.3d at p. 764.)

Appellant's reliance on *People v. Torres* (2008) 163 Cal.App.4th 1420 (*Torres*) and *People v. Mustafaa* (1994) 22 Cal.App.4th 1305 (*Mustafaa*) is misplaced. In each case, the trial court imposed an unauthorized sentence in which the error had the effect of enhancing the length of the sentence. (*Torres*, *supra*, 163 Cal.App.4th at pp. 1432-1433; *Mustafaa*, *supra*, 22 Cal.App.4th at pp. 1311-1312.) In remanding for re-sentencing, the appellate court directed the trial court not to impose a total sentence more severe than the unauthorized sentence. (*Torres*, *supra*, at pp. 1432-1434; *Mustafaa*, *supra*, at p. 1312.)

Here, in contrast, the error in the unauthorized sentence had the effect of *reducing* the length of appellant's sentence. In *Torres* and *Mustafaa*, the appellate courts acknowledged that such errors may be corrected, even though the resulting sentence is longer than the unauthorized sentence. (*Torres*, *supra*, 163 Cal.App.4th at pp. 1429-1432 [observing that under *Serrato*, *Sandel*, and other cases, imposing a longer sentence is proper when the erroneous sentence "demonstrated legally unauthorized leniency that resulted in an aggregate sentence that fell below that authorized by law"]; *Mustafaa*, *supra*, 22 Cal.App.4th at p. 1311 [noting that the *Serrato* rule encompasses unauthorized sentences involving "the imposition of concurrent terms when the statute required consecutive terms"].)[6]

In a related contention, appellant maintains the trial court abused its discretion in resentencing him, arguing that the court erroneously believed that it lacked the authority to reconsider its prior sentencing choices. We disagree. The record establishes that the court correctly understood the scope of its discretion.

---

[6] Because *Torres* and *Mustafaa* are factually distinguishable, we do not address whether they were correctly decided.

16

At the re-sentencing hearing, the trial court observed that it had the discretion to strike appellant's strike with respect to one or both of appellant's offenses, for purposes of sentencing under the Three Strikes law. After hearing argument from counsel, the court decided to strike the strike with respect to the grand theft. However, the court declined to select the low term for the robbery, stating, "I already made a very extensive record as to why . . . the [middle] term was the appropriate way to go. [¶] I'm not going to reverse that now." The court also declined to strike the strike for other sentencing purposes under the Three Strikes law, remarking that it would be "disingenuous . . . to restate things in order to get to a particular number. [¶] We're not supposed to . . . circumvent [the Three Strikes] law in order to get to a number. . . . [¶] . . . . So I'm not going to d[o] that. My record has been made. It will remain as I stated previously." The record thus discloses that the court declined to reconsider its prior discretionary decisions because it believed they were well-founded. In sum, the trial court did not err in imposing a longer sentence after vacating appellant's original unauthorized sentence.

## DISPOSITION

The judgment is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MANELLA, J.

We concur:

WILLHITE, Acting P. J.

EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.