Filed 9/20/24  P. v. Moreno-Rodriguez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C098862 |
| v. | (Super. Ct. No. 21FE012664) |
| ARMANDO MORENO-RODRIGUEZ, | |
| Defendant and Appellant. | |

Armando Moreno-Rodriguez drove his car onto a bicycle trail while under the influence of alcohol.  His car hit and killed Michael Dodson.  A jury convicted defendant of second degree murder, gross vehicular manslaughter while intoxicated, failing to stop at the scene of an accident resulting in death, and driving with a suspended license.  The jury also found true allegations that defendant had three prior convictions for driving with

1

a blood alcohol concentration of .08 percent or more.  The trial court sentenced defendant to a determinate prison term of one year, consecutive to an indeterminate term of 15 years to life.

Defendant now contends (1) the law of second degree murder based on implied malice and gross vehicular manslaughter while intoxicated is unconstitutionally vague in the context of a drunk driving case; (2) insufficient evidence supports the conviction for failing to stop at the scene of an accident resulting in death; (3) the trial court erred in instructing the jury on flight as evidence of consciousness of guilt; (4) the indeterminate abstract of judgment must be corrected to indicate life with the possibility of parole; and (5) the trial court should have instructed the jury that to convict defendant of implied malice murder, it had to find that his conduct involved a high probability of death.

The People counter that remand is required because the sentence imposed on the count three conviction for failing to stop at the scene of an accident is unauthorized.

We conclude (1) the law of second degree murder based on implied malice and gross vehicular manslaughter while intoxicated is not unconstitutionally vague in the context of a drunk driving case; (2) substantial evidence supports the jury's finding that defendant failed to stop at the scene of an accident resulting in death; (3) there was sufficient evidence to warrant an instruction on flight as evidence of consciousness of guilt; (4) the indeterminate abstract of judgment should indicate life with the possibility of parole, but in addition, the count three sentence for failing to stop at the scene of an accident must be vacated and the matter remanded for resentencing on that count, and on remand, the trial court must impose a sentence on the count four conviction for driving with a suspended license; and (5) the fifth contention asserting instructional error is forfeited.

We will vacate the sentence on the count three conviction for failing to stop at the scene of an accident and remand the matter to the trial court for resentencing on that count.  We will also direct the trial court on remand to impose a sentence on the count

2

four conviction for driving with a suspended license.  We will otherwise affirm the judgment.

## BACKGROUND

On a clear and sunny day in June 2021, members of a cycling club were riding bicycles on the American River Parkway trail.  Use of the trail was generally limited to pedestrians and bicyclists.  Sacramento County Park ordinances limited driving on trails to authorized and permitted vehicles.

Cyclists saw an Audi sedan driving on the trail toward them and waved at the car to slow down, but it did not.  Some cyclists swerved off the trail to avoid the car.

Witnesses then heard two thud sounds and the sound of the Audi accelerating away.  Michael Dodson, a member of the cycling club, was found on the side of the trail, unconscious.  He suffered significant injuries and died 25 days later.  A detective opined from damage to the bicycle that the Audi hit the front of the bicycle.

The Audi stopped about 200 or 300 feet from Dodson, past a turn in the trail. The car engine was still running and liquid leaked from the car.  Defendant smelled of alcohol, his eyes were bloodshot, and his speech was slurred.  Field sobriety tests indicated defendant was alcohol impaired.  A blood draw determined a blood alcohol concentration of .276 percent.

Investigation showed that a car had hit and driven through a gate to the trail. Parts from the Audi's bumper were found at the gate area.

Defendant driver's license had been suspended in October 2017 and was never reinstated.  Defendant knew his license had been suspended.  Nevertheless, he purchased the Audi about a month before the June 29, 2021 collision.  Defendant had been convicted on three prior occasions for driving under the influence of alcohol.

The jury convicted defendant of second degree murder (Pen. Code, § 187, subd. (a) – count one),[1] gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a) –count two), failing to stop at the scene of an accident resulting in death (Veh. Code, § 20001, subd. (b)(2) – count three), and driving with a suspended license (Veh. Code, § 14601.2, subd. (a) – count four). The jury found true allegations that defendant had three prior convictions for driving a vehicle with .08 percent or more, by weight, of alcohol in his blood. The trial court sentenced defendant to a determinate prison term of one year, consecutive to an indeterminate term of 15 years to life.

## DISCUSSION

### I

Defendant contends the crimes of second degree murder based on implied malice and gross vehicular manslaughter while intoxicated are indistinguishable in a drunk driving case and the law is, therefore, unconstitutionally vague.

The due process guarantees of the United States and California Constitutions require " 'a reasonable degree of certainty in legislation, especially in the criminal law.' " (*People v. Heitzman* (1994) 9 Cal.4th 189, 199; accord *People v. Superior Court* (*Caswell*) (1988) 46 Cal.3d 381, 389.) "To withstand a facial vagueness challenge under the due process clause, a statute must . . . [¶] . . . be sufficiently definite to provide adequate notice of the conduct proscribed. '[A] statute which either forbids or requires the doing of an act in terms so vague that [individuals] of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. [Citations.]' " (*Caswell*, at pp. 389; accord *Johnson v. United States* (2015) 576 U.S. 591, 595.) Due process also requires a statute to provide sufficiently definite guidelines for those charged with its enforcement to prevent arbitrary

---

[1] Undesignated statutory references are to the Penal Code.

4

and discriminatory enforcement. (*People v. Morgan* (2007) 42 Cal.4th 593, 605; *Heitzman* at p. 199; *Caswell,* at p. 390; *Johnson*, at p. 595.)

Defendant asserts that "drunk driving murder" and "drunk driving manslaughter" require the same conduct and state of mind and are indistinguishable. But the California Supreme Court has rejected the argument that second degree murder based on implied malice and vehicular manslaughter with gross negligence are coterminous crimes. (*People v. Watson* (1981) 30 Cal.3d 290, 296-297, 295-296 (*Watson*).)

Second degree murder is the unlawful killing of a human being or fetus with malice aforethought. (§ 187, subd. (a); *People v. Knoller* (2007) 41 Cal.4th 139, 151 (*Knoller*).) Implied malice requires proof of a physical act and a mental state. (*In re Ferrell* (2023) 14 Cal.5th 593, 600 (*Ferrell*).) These components of implied malice are long settled. (*Knoller,* at p. 152; see *Watson, supra*, 30 Cal.3d at pp. 296-297, 300.)

In contrast, gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, in violation of specified Vehicle Code sections prohibiting driving under the influence, and in which the killing was the proximate result of the commission of an infraction or misdemeanor with gross negligence or a lawful act that might produce death in an unlawful manner with gross negligence. (§ 191.5, subd. (a).) The requisite mental state for the crime is gross negligence. (*Watson, supra*, 30 Cal.3d at p. 296.)

The Supreme Court explained in *Watson* that the requisite mental states for implied malice and gross negligence are not identical because implied malice contemplates a subjective awareness of a higher degree of risk than does gross negligence, and implied malice involves an element of wantonness absent in gross negligence. (*Watson, supra*, 30 Cal.3d at pp. 295-296; see *People v. Dellinger* (1989) 49 Cal.3d 1212, 1221 [stating that wantonness connotes conscious or knowing acts]) A subjective standard applies to a finding of implied malice whereas an objective test applies to a finding of gross negligence. (*Watson,* at pp. 296-297.) The Supreme Court

held that second degree implied malice murder and gross negligence vehicular manslaughter involve different kinds of culpability or criminal conduct. (*Id.* at p. 297.) And it found unpersuasive the argument that the more specific provisions applicable to vehicular homicides preempted the general murder statutes, an argument defendant appears to make here. (*Id.* at pp. 295-298.)

Defendant nevertheless argues that because section 29.4 precludes a jury from considering mental impairment, the subjective awareness aspect of an implied malice murder conviction "is an empty vessel." We disagree with defendant's characterization of section 29.4.

Section 29.4 prohibits the use of evidence of voluntary intoxication to establish that a defendant acted without implied malice. (*People v. Soto* (2018) 4 Cal.5th 968, 975, 978.) It embodies a legislative judgment that voluntary intoxication can serve no defensive purpose in an implied malice murder case. (*People v. Timms* (2007) 151 Cal.App.4th 1292, 1300.) "In short, voluntary intoxication is irrelevant to proof of the mental state of implied malice or conscious disregard." (*Ibid.*) But section 29.4 does not preclude a jury from any consideration of a defendant's mental state. To obtain a conviction for second degree murder based on implied malice, the People must prove that the defendant acted deliberately with a conscious disregard for life, knowing that his or her conduct endangered the life of another. (See *Ferrell, supra*, 14 Cal.5th at p. 600; *Watson, supra*, 30 Cal.3d at pp. 296-297; *Timms*, at pp. 1300-1301 [concluding that former section 22 [now section 29.4] does not lessen the prosecution's burden of proof].)

Defendant further argues that the jury instructions given did not convey the subjective/objective distinction between implied malice murder and gross negligence vehicular manslaughter, they required "conscious disregard" for both crimes, and the closing arguments conflated the elements of the two crimes. The arguments lack merit.

The trial court told the jury the mental state for second degree murder was implied malice and the mental state for gross vehicular manslaughter while intoxicated was gross

6

negligence.  The instruction on the murder count conveyed the physical and mental components of implied malice and set forth the applicable subjective standard.  With regard to gross vehicular manslaughter while intoxicated, the trial court told the jury that a conviction required proof that defendant committed the requisite act – driving while under the influence of alcohol – with gross negligence.  It instructed that gross negligence involved acting in a reckless way that created a high risk of death or great bodily injury under circumstances in which a reasonable person would have known that acting in that way would create such a risk.  The instruction conveyed the objective standard applicable to a finding of gross negligence.  Contrary to defendant's assertion, the gross vehicular manslaughter while intoxicated instruction did not mention conscious disregard.  Moreover, the trial court told the jury to follow the law as the trial court explained it and to follow the trial court's instructions if the jury believed the attorney's comments on the law conflicted with the court's instructions.  We presume the jury followed the trial court's instructions.  (*People v. Morales* (2001) 25 Cal.4th 34, 47.)

In supplemental briefing, defendant further argued that *People v. Reyes* (2023) 14 Cal.5th 981 (*Reyes*) changed the law of implied malice murder by adding an element that the defendant's act must involve a high degree of probability that it will result in death.  Defendant contends the new element does not distinguish murder from manslaughter.  We do not agree that *Reyes* changed the law by adding a new element.

*Reyes* reiterated the long-established standard for implied malice murder: "Murder is committed with implied malice when 'the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " ' " (*Reyes*, at p. 988.)  With regard to the actus reus element, the court in *Reyes* cited *Knoller, supra*, 41 Cal.4th 139 and reiterated that "the defendant's act must not merely be dangerous to life in some vague or speculative sense; it must ' "involve[ ] a high degree of probability that it will

7

result in death." ' " (*Reyes*, at p. 989.) As *Knoller* explained, the standard that the act must involve a high degree of probability that it will result in death derived from Justice Traynor's concurring opinion in *People v. Thomas* (1953) 41 Cal.2d 470. (*Knoller*, at p. 152.) Thus, contrary to defendant's assertion, *Reyes* did not change the law of implied malice murder; it merely restated it. Defendant's argument lacks merit because his premise is incorrect.

The law of second degree murder based on implied malice and gross vehicular manslaughter while intoxicated is not unconstitutionally vague in the context of a drunk driving case.

## II

Defendant next claims there is insufficient evidence to support his conviction for failing to stop at the scene of an accident resulting in death.

In determining whether sufficient evidence supports a conviction, " 'we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.]' " (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) And " '[w]e "must accept logical inferences that the jury might have drawn from the circumstantial evidence." ' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) We do not reweigh evidence or reevaluate witness credibility. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

The driver of a vehicle involved in an accident resulting in the death of a person must immediately stop the vehicle at the scene of the accident and furnish information

specified in section 20003 and render assistance to any person injured. (Veh. Code, § 20001, subd. (a).) The requirement to immediately stop means to stop the vehicle as promptly as possible under the circumstances. (*People v. Odom* (1937) 19 Cal.App.2d 641, 647.)

In this case, witnesses heard the Audi accelerate away after the collision. The car stopped about 200 or 300 feet from the crash site. Witnesses opined that the Audi stopped or became inoperable because of damage to the car. Although he did not object at trial to such opinion testimony, defendant now argues it invited the jury to speculate that the Audi broke down and that defendant would have otherwise driven away from the scene. Defendant also complains that there was no expert testimony about why the Audi stopped. But the failure to assert a timely objection forfeited his evidentiary challenges. (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 588.)

As for his sufficiency of the evidence challenge, we conclude a jury could reasonably find from the evidence that defendant failed to promptly stop at the scene of the collision. And we would reach the same conclusion even if we did not consider the testimony defendant now challenges, because there was evidence that defendant did not stop immediately but instead accelerated away after the crash. Further, there was no evidence that defendant fulfilled his other mandatory duties, i.e., furnishing the statutorily required information and rendering assistance to Dodson. Defendant has not established that the count three conviction for failing to stop at the scene of the accident must be reversed.

### III

Defendant further asserts it was error to instruct the jury on flight as evidence of consciousness of guilt because there was no evidence he failed to stop promptly after the collision.

" 'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement

was motivated by a consciousness of guilt." ' [Citations.] Evidence that a defendant left the scene is not alone sufficient; instead, the circumstances of departure must suggest 'a purpose to avoid being observed or arrested.' [Citations.] To obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury could find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*People v. Bonilla* (2007) 41 Cal.4th 313, 328, italics omitted; accord *People v. Abilez* (2007) 41 Cal.4th 472, 522.)

As we have explained, there is substantial evidence that defendant immediately left the scene of the collision. Defendant's car hit Dodson and his bicycle. The impact shattered the car's windshield and left a large hole in the driver's side of the windshield. Yet defendant accelerated away. A jury could reasonably find from the evidence that defendant fled the crash site and it could reasonably infer that the flight showed a consciousness of guilt. "Alternative explanations for flight conduct go to the weight of the evidence, which is a matter for the jury, not the court, to decide." (*People v. Rhodes* (1989) 209 Cal.App.3d 1471, 1477.) There was sufficient evidence to warrant an instruction regarding flight as evidence of consciousness of guilt.

IV

In addition, defendant asserts the abstract of judgment for the indeterminate sentence must be corrected to eliminate a reference to life without the possibility of parole, because no such sentence was imposed. We agree the indeterminate abstract of judgment should indicate life with the possibility of parole on counts one and two. But for the reasons we will explain, remand for resentencing and sentencing is also required.

The People assert that the one-year sentence on the count three conviction for failing to stop at the scene of an accident is unauthorized. According to the People, the trial court erred in using the indeterminate term on the count one conviction for second degree murder as the principal term for purposes of computing the determinate sentence on count three, and because there was no other determinate term imposed, the trial court

10

could not have sentenced defendant to one-third the middle term on count three. The People are correct.

An overall sentence may include both determinate and indeterminate terms. (*People v. Felix* (2000) 22 Cal.4th 651, 655.) When a determinate sentence is imposed under section 1170 and the sentence is to run consecutively to, or concurrently with, an indeterminate sentence imposed under section 1168, subdivision (b), the judgment must specify the determinate term, computed without reference to the indeterminate sentence, and order the determinate term be served consecutively to or concurrently with the indeterminate term. (Cal. Rules of Court, rules 4.403, 4.451(a).) With regard to the determinate term, " 'most felonies specify three possible terms of imprisonment (the lower, middle, and upper terms); . . . [and] the trial court selects one of these terms.' " (*Felix,* at p. 654.) "[I]f a defendant is convicted of more than one offense carrying a determinate term, and the trial court imposes consecutive sentences, the term with the longest sentence is the 'principal term'; any term consecutive to the principal term is a 'subordinate term.' [Citation.] The court imposes the full term, either lower, middle, or upper, for the principal term. However, in general (there are exceptions), the court imposes only 'one-third of the middle term' for subordinate terms." (*Id.* at p. 655; see § 1170.1, subd. (a).)

Here, the trial court imposed a sentence of 15 years to life in prison on the count one conviction for second degree murder and imposed but stayed the same sentence on the count two conviction for gross vehicular manslaughter while intoxicated. It then imposed a one-year prison sentence on the count three conviction for failing to stop at the scene of an accident, consecutive to the indeterminate term, saying that the one-year term was one-third the middle term. It did not impose a sentence on the count four conviction for driving with a suspended license.

In sentencing defendant to one-third the middle term on count three, the trial court treated the indeterminate term as a principal term. But sentencing for determinate

11

and indeterminate term crimes must be performed separately. (Cal. Rules of Court, rules 4.403, 4.451(a); *People v. Neely* (2009) 176 Cal.App.4th 787, 793, 797-799; see *People v. Lyons* (1999) 72 Cal.App.4th 1224, 1228 ["there is no provision for making a determinate term either principal or subordinate to an indeterminate term"]; *People v. Reyes* (1989) 212 Cal.App.3d 852, 856 [when a defendant is sentenced to both determinate and indeterminate terms, neither is "principal" or "subordinate;" they are considered and calculated independently of one another]; *People v. Day* (1981) 117 Cal.App.3d 932, 936-937 [same].) The court in *Neely* described it as sentencing in separate boxes. (*Neely*, at pp. 798-799.) Because the trial court did not do so here, we will vacate the sentence on the count three conviction for failing to stop at the scene of an accident and remand for resentencing on that count. (*Id.* at p. 799.)

Although the parties did not raise the issue, we have identified another problem with defendant's sentence. The jury found defendant guilty on count four of driving with a suspended license in violation of Vehicle Code section 14601.2, subdivision (a). Subdivision (d) of Vehicle Code section 14601.2 sets forth the possible punishment for such a violation. But the trial court did not impose any sentence on count four. A trial court must impose a sentence on each count except where probation is granted, and probation was not granted here. (§ 12; *People v. Duff* (2010) 50 Cal.4th 787, 795-796; *People v. Alford* (2010) 180 Cal.App.4th 1463, 1466, 1468.) Failure to pronounce sentence on a count results in an unauthorized sentence. (*People v. Price* (1986) 184 Cal.App.3d 1405, 1411, fn. 6.) Because the law appears clear on this issue, we will direct the trial court to impose sentence on the count four conviction for driving with a suspended license without requesting supplemental briefing. Any party aggrieved by this approach may file a petition for rehearing. (Gov. Code, § 68081.)

## V

In supplemental briefing, defendant claims the trial court should have instructed the jury that to convict defendant of implied malice murder, it had to find that his conduct involved a high probability of resulting death. Defendant's contention is forfeited.

Defendant's claim is based on *Reyes, supra*, 14 Cal.5th 981. As we have explained, *Reyes* reiterated that the defendant's act must involve a high degree of probability that it will result in death. (*Reyes*, at p. 989.) Here, the trial court instructed the jury on the actus reus element of implied malice pursuant to CALCRIM No. 520 as follows: the defendant had implied malice if he committed an act, the natural and probable consequences of which were dangerous to human life. The California Supreme Court has held that the phrase defendant argues should have been included in the jury instruction – that he committed an act involving a high degree of probability that it will result in death – articulates the same standard as the phrase the trial court used in its instruction, namely, that defendant had implied malice if he committed an act, the natural consequences of which are dangerous to life. (*Knoller, supra*, 41 Cal.4th at p. 152.)

Defendant did not object to the CALCRIM No. 520 instruction or ask the trial court for an amplifying or clarifying instruction regarding the actus reus element. Consequently, his appellate claim is forfeited. (*People v. Guiuan* (1998) 18 Cal.4th 558, 570 [a party may not complain on appeal that an instruction correct in law and responsive to the evidence was incomplete unless the party has requested appropriate clarifying or amplifying language]; *People v. Tuggles* (2009) 179 Cal.App.4th 339, 364.) But even if the contention had not been forfeited, it would lack merit because the instruction given was legally correct. (See *Knoller, supra*, 41 Cal.4th at p. 152.)

## DISPOSITION

The sentence on the count three conviction for failing to stop at the scene of an accident is vacated and the matter is remanded to the trial court for resentencing on that count. On remand, the trial court shall also sentence defendant on the count four

conviction for driving with a suspended license.  The judgment is otherwise affirmed. Following resentencing and sentencing, the trial court shall prepare amended and/or corrected abstracts of judgment as appropriate, reflecting the resentencing on count three, the sentence on count four, and life with the possibility of parole on counts one and two. The trial court shall forward a certified copy of the amended and/or corrected abstracts of judgment to the Department of Corrections and Rehabilitation.


_____/S/_____

MAURO, Acting P. J.


We concur:


_____/S/_____

RENNER, J.


_____/S/_____

KRAUSE, J.


14